**James PUCKETT, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 38880.**

Court of Criminal Appeals of Texas.

Jan. 12, 1966.

Rehearing Denied Feb. 23, 1966.

Jesse L. Nickerson, Pittsburg (Court-appointed attorney), for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Judge.

The offense is murder; the punishment, life.

The state's evidence, including the confession of the appellant, reflects that appellant went to the home of the deceased and her mother armed with a shotgun and, without justification or excuse, fired a shot through the kitchen window from a distance of some 12 to 15 feet, which struck the deceased in the abdominal area of her body inflicting injuries from which she died the next day.

The state's evidence further shows that Sheriff Loveless got the call at 11 o'clock P.M. and, around 3 o'clock A.M., found appellant in the loft or attic of his mother's home. Appellant was arrested and taken

to the County Attorney's Office in the courthouse where his confession introduced in evidence was made to the County Attorney.

Appellant denied having shot the deceased and testified that he signed the confession after he had asked for an attorney and County Attorney Bell " * * * told me I didn't need nary one," because Sheriff Loveless had already pulled a gun on him out at the house and he was scared.

Prior to admitting the confession to the jury the trial judge retired the jury and heard evidence offered by the state and the defendant's testimony and, at the conclusion of such hearing, found that the alleged confession was freely and voluntarily made and found that appellant had been warned of his rights in conformity with the laws of this state; that he was not threatened, harmed or mistreated by anyone prior to making and signing the statement.

The court further found in his order admitting the confession in evidence: "4. Defendant did not request counsel to advise or represent him or be present at any time after his arrest and before making and signing the said statement. He was not denied or refused counsel by L. E. Bell, Jr., or any other person prior to making the said statement. Counsel for him was not mentioned."

The sole ground upon which reversal is sought is: "The Court erred in not granting Defendant's motion for new trial thereby violating Defendant's rights under the due process clause of the Fourteenth Amendment to the Federal Constitution because the uncontroverted evidence shows that Defendant was denied counsel at the time his alleged confession was taken."

We do not agree that the uncontroverted evidence shows that appellant was denied counsel.

■ To the contrary, we find the evidence sufficient to sustain the trial court's finding that appellant was not denied or re-

fused counsel; that he did not request counsel and that counsel for him was not mentioned.

Appellant testified that he asked for an attorney and Mr. Bell told him two or three times that he did not need one, and that a lawyer would do him no good.

County Attorney Bell testified that he did not tell appellant that he could not have a lawyer and testified:

"Q. Did he say anything about getting an attorney to represent him at any time during the taking of this confession, before or after it?

"A. No, sir, not at all.

* * * * * *

"Q. Mr. Bell, did you advise him of his right to have an attorney present?

"A. I advised him of all rights that are provided under the Statute, Mr. Nickerson.

"Q. Did you advise him of his right to have an attorney?

"A. If it is in that confession I advised him; if it is not I didn't, because I used that to go by.

"Q. In other words, if it isn't printed here you did not?

"A. Yes."

Sheriff Loveless testified:

"Q. I want to ask you, Mr. Loveless, you have testified previously that you were in the office of Mr. L. E. Bell, Jr., on the morning of December 22, 1964, at the time the Defendant made a confession. Now, I want to ask you, Mr. Loveless, did the Defendant, James Puckett, at that time tell you or anyone in your presence that he wanted an attorney?

"A. He did not.

* * * * * *

"Q. Did you hear anybody mention that he had the right to have an attorney present?

"A. I didn't hear no attorney mentioned.

"Q. Did you hear anybody mention that he had the right if he wanted to to have an attorney?

"A. No, I didn't hear no attorney mentioned.

"Q. I say, did you hear anybody advise him that?

"A. No, sir."

Constable Roger Durant testified:

"Q. Roger, I want to ask you this question. You testified previously that you were present when James Puckett signed a confession in the office of L. E. Bell, Jr., on the 22nd of December, 1964. Now, at that time did James Puckett ask you or anyone else in your presence for an attorney?

"A. No, sir, he didn't.

"Q. Did he make any statement at all about getting an attorney?

"A. No, sir, he didn't."

He further testified:

"Q. Well, did you hear anybody say he had to tell the truth, or did you hear anybody say you don't have to tell the truth?

"A. The only thing that I can recall is that Mr. Bell advised him of his rights, and * * *

"Q. What were those rights?

"A. That he didn't have to sign a statement unless he wanted to, and that he could have counsel if he wanted to.

"Q. All right, sir. That he could have Counsel if he wanted it?

"A. Right.

"Q. And you distinctly heard that?

"A. Yes, sir."

· It is evident that the trial court resolved the fact issues raised by the above testimony when he found that appellant was not denied or refused counsel.

■ The fact that the County Attorney did not advise appellant of his right to counsel or that counsel for him was not mentioned shows no denial of due process under Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

The judgment is affirmed.